IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NINH LE,

Petitioner,

vs.

WARDEN, McCook ICE Detention Center; and
UNITED STATES OF AMERICA,

Respondents.

4:26CV3040

**MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS
CORPUS**

This action for habeas corpus relief pursuant to 28 U.S.C. § 2241 was originally filed *pro se* by Petitioner Ninh Le, who entered the United States in 1982 as a refugee from Vietnam, was ordered removed in 1996 for engaging in criminal activity, but was then released on supervision in 2000. Filing 1; Filing 6 at 4–5 (¶¶ 11–22). He now challenges his subsequent detention by United States Immigration and Customs Enforcement (ICE) after his rearrest for deportation in January 2026. Filing 1. Le alleges that his "prolonged" detention without an individualized bond hearing violates the Fifth Amendment to the United States Constitution. Filing 1 at 2 (§ IV., ¶ 1). This case is now before the Court on Le's Petition for Writ of Habeas Corpus, Filing 1, after briefing and a hearing on March 12, 2026, Filing 17 (hearing minutes).

The issues in this habeas corpus proceeding are considerably different from those the undersigned has recently heard involving disputes over detention of undocumented aliens pursuant to either 8 U.S.C. § 1225 or 8 U.S.C. § 1226 after the aliens were discovered in the United States. This case bears a greater similarity to one other habeas proceeding in which the petitioner also sought relief from his continued civil immigration detention following a final order of removal, although in that case, the immigration judge (IJ) had granted withholding of removal to the alien's country of citizenship under INA § 241(b)(3), codified at 8 U.S.C. § 1231(b)(3). Petitioner Le's

1

*pro se* Petition alleges that his "prolonged" detention pending removal to Vietnam without an individualized bond hearing before an immigration judge (IJ) has become effectively "indefinite." Filing 1 at 2 (§ III., ¶¶ 2– 4). The Federal Respondent states that in November 2020, Vietnam executed a Memorandum of Understanding (or MOU) with the United States, agreeing to accept its citizens who entered the United States before July 12, 1995, and were later ordered removed. Filing 4 at 1. Thus, the Federal Respondent states that on January 21, 2026, Petitioner's supervised release was revoked, he was detained, and his travel documents for removal are now pending. Filing 4 at 1. The Federal Respondent argues that Le's detention for about two months is presumptively valid under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), and that removal is significantly likely to occur within the reasonably foreseeable future. Filing 4 at 1–2. In reply, Le—now represented by appointed counsel—argues that his cumulative detention, for over three years after he was ordered removed the first time and for more than 50 days most recently, totals over 1,200 days, well in excess of the 6-month period found presumptively constitutional in *Zadvydas*. Filing 14 at 1–2. Le argues that there is no case-specific reason to believe that Vietnam is actually willing to accept him for removal. Filing 14 at 1.

For the reasons stated below, the Court now denies Le's Petition.

## I. INTRODUCTION

### A. Factual Background

Le's *pro se* Petition provides little factual background to his claim for relief. Filing 1 *passim*. The Federal Respondent provides considerably more background based on a declaration of Deportation Officer Peter Miller submitted with the Federal Respondent's return. Filing 6. The factual background set out in Le's reply brief by his appointed counsel also draws upon DO Miller's declaration and the materials attached to that declaration. *See* Filing 14 at 2–3.

According to DO Miller, Le entered the United States at San Francisco, California, on July 30, 1982, and was admitted as a refugee from Vietnam. Filing 6 at 4 (¶¶ 11–13). His status was later adjusted to a Lawful Permanent Resident on April 20, 1988. Filing 6 at 4 (¶ 14). However, on September 26, 1996, Le was "encountered" by Immigration and Customs Enforcement (ICE), then known as Immigration and Naturalization Services (INS), in the Woodbury County, Iowa, Corrections Center during a check-in with his probation officer following Le's conviction of possession with intent to deliver cocaine on May 31, 1996. Filing 6 at 4 (¶ 15).

On September 26, 1996, Le was transported to the Sioux City, Iowa, INS Office for processing and interviewing after his arrest, where he was served an I-221 Order to Show Cause and Notice of Hearing and an I-200 Warrant of Arrest, and placed in removal proceedings. Filing 6 at 4 (¶ 16). The removal proceedings were based on Immigration and Nationality Act (INA) 241(a)(2)(A)(iii), now codified at 8 U.S.C. § 1227(a)(2)(A)(iii), for a conviction of an aggravated felony, and § 241(a)(2)(B)(i), now codified at § 1227(a)(2)(B)(i), for conviction of a controlled substance offense. Filing 6 at 4 (¶ 16).[1] Le was ordered deported to Vietnam by an IJ after the conclusion of his immigration proceedings. Filing 6 at 4 (¶ 17). Eventually, on February 25, 2000, Le was served an Order of Supervision outlining the guidelines for his release from detention. Filing 6 at 5 (¶ 22).

ICE encountered Le on January 21, 2026, during a check-in while on an Order of Supervision, and Le was taken into custody. Filing 6 at 5 (¶ 23). That same day, he was issued an I-205 Warrant of Deportation, an I-294 Warning to Alien Ordered Removed or Deported, and a Notice of Revocation of Release. Filing 6 at 5 (¶ 23). The Notice informed Le that his case was under review by Vietnam for issuance of a travel document. Filing 6 at 5 (¶ 23). Le has remained

---

[1] The Court has determined where these provisions are now codified.

in custody at the McCook ICE Detention Facility. Filing 6 at 5 (¶ 24). Le has been compliant with requirements that he fill out forms necessary for repatriation. Filing 6 at 4 (¶ 25). A travel document request was submitted to ICE Headquarters on February 6, 2026, and Le's first Post-Custody Review was scheduled for February 20, 2026. Filing 6 at 5 (¶ 25).

### B.  Procedural Background

On February 11, 2026, Le filed his original Petition *pro se* asserting a claim of violation of his Fifth Amendment due process rights based on "prolonged" detention. Filing 1. He requests that the Court grant the following relief:

> A.      Grant this Petition for Writ of Habeas Corpus;
>
> B.      Order the Government to provide Petitioner with an individualized bond hearing before an Immigration Judge within a reasonable time;
>
> C.      Alternatively, order Petitioner's immediate release under reasonable conditions of supervision; [and]
>
> D.      Grant any other relief the Court deems just and proper.

Filing 1 at 3 (V. REQUEST FOR RELIEF, "Wherefore" clause).

Senior United States District Judge Joseph F. Bataillon, as the judge supervising *pro se* cases, entered an Order to Show Cause on February 12, 2026. Filing 3. In that order, he directed the Clerk of Court to add two Assistant United States Attorneys (AUSAs) as counsel for Respondents. Filing 3 at 1. He also set deadlines of February 18, 2026, for Respondents' Return and February 23, 2026, for Petitioner's Reply, if any. Filing 3 at 1–2. At some point, the United States (referred to here as the Federal Respondent) was also added to the caption of the case, although no amended pleading naming the United States or any United States official has ever been filed. One of the AUSAs filed a Response to the Petition for Writ of Habeas Corpus on February 18, 2026, Filing 4 at 1. The AUSA stated in the opening sentence of the Response that "[t]he undersigned only represents the United States of America and cannot represent the warden

4

of the McCook Detention Facility or the State of Nebraska, which operates the detention center."
Filing 4 at 1.

In an Order entered on February 20, 2026—after the Federal Respondent filed its Response—Judge Bataillon *inter alia* appointed counsel "to assist Petitioner with the prosecution of his claims and through trial, if this case should proceed to trial." Filing 8 at 1. Judge Bataillon also directed random reassignment of the case to a different judge, and stated, "The deadline for Petitioner to reply in support of the petition is hereby continued pending further order from the judge reassigned to this matter." Filing 8 at 1. The case was then reassigned to the undersigned. Filing 9. Therefore, the Court set a deadline for Petitioner's Reply, if any, and a date and time for a hearing on the Petition. Filing 11. However, on February 26, 2026, at the request of Le's newly appointed counsel, the Court reset the deadline for Le's reply and the date for the hearing. Filing 13.

The hearing was held via Zoom videoconference on March 12, 2026, in the midst of the Court's trial of another matter. Filing 17 (hearing minutes). At the hearing, the Court directed counsel for Le to effect proper service on the State Respondent, the Warden of McCook Detention Center, who has physical custody of Le, given such service is required by law. Filing 17. The parties agreed that no further hearings would be needed once service was effected, and the Court took this matter under advisement. Filing 17. On March 12, 2026, Le's counsel filed a Proof of Service on the State Respondent. Filing 18. No one ever entered an appearance in the case on behalf of the State Respondent, and the State Respondent filed no return in response to Le's Petition.

Having considered the parties' written and oral submissions, the Court now enters this order on Le's Petition.

5

## II.  LEGAL ANALYSIS

### A.  The Legal Context

Some legal context will be helpful to understanding the issues and arguments in this case. Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Herdem. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243.

The statute relevant to Le's detention is 8 U.S.C. § 1231, which "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (citing 8 U.S.C. § 1231(a)). Section 1231(a)(1) specifies the removal period, when the period begins, and under what circumstances the removal period may be suspended, as follows:

   (a) Detention, release, and removal of aliens ordered removed

       (1) Removal period

           (A) In general

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
>
> (B) Beginning of period
>
> The removal period begins on the latest of the following:
>
> > (i) The date the order of removal becomes administratively final.
> >
> > (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> >
> > (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>
> (C) Suspension of period
>
> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(A)–(C).[2] Thus, as the Supreme Court has explained, "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson*, 596 U.S. at 578 (citing 8 U.S.C. § 1231(a)(1)(A)); *Mumad v. Garland*, 11 F.4th 834, 837 (8th Cir. 2021) ("Under the Immigration and Nationality Act, Congress directs the Attorney General to remove an alien from the country within ninety days of a removal order." (citing 8 U.S.C. § 1231(a)(1)(A)).

---

[2] 8 C.F.R. § 241.4(g) contains comparable provisions concerning the removal period and its suspension. *See* 8 C.F.R. § 241.4(g)(1)(i)–(ii).

Section 1231(a)(2) also provides "that the Government 'shall' detain noncitizens during the statutory removal period." *Johnson, 596 U.S. at 578* (quoting 8 U.S.C. § 1231(a)(2)). Specifically, it states in the part relevant here,

> (2) Detention
>
>> (A) In general
>>
>> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2). In 1996, Le was determined to be deportable under what is now § 1227(a)(2). Filing 6 at 4 (¶¶ 16–17).[3]

Section 1231(a) also provides for supervision after the 90-day removal period expires, as follows:

> (3) Supervision after 90-day period
>
> If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—
>
>> (A) to appear before an immigration officer periodically for identification;
>>
>> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>>
>> (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>>
>> (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

---

[3] Again, the Court has determined where the provisions of the INA that Le violated are now codified.

8

8 U.S.C. § 1231(a)(3). Le was released in 2000 subject to supervision after being found to be

removable in 1996.[4]

Section 1231(a)(6) limits detention of aliens ordered removed beyond the removal period

as follows:

> (6) Inadmissible or criminal aliens
>
> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). Thus, as the Supreme Court explained,

> After the removal period expires, the Government "may" detain only four categories of people: (1) those who are "inadmissible" on certain specified grounds; (2) those who are "removable" on certain specified grounds; (3) those it determines "to be a risk to the community"; and (4) those it determines to be "unlikely to

---

[4] Revocation of supervised release is permissible under 8 C.F.R. § 241.13(i), which states:

(i) Revocation of release—

(1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

(2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(j).

comply with the order of removal." § 1231(a)(6). Individuals released after the removal period remain subject to terms of supervision. *Ibid.*

*Johnson*, 596 U.S. at 578–79. Again, in 1996, Le was determined to be deportable under what is now § 1227(a)(2) so that he falls within § 1231(a)(6). Filing 6 at 4 (¶¶ 16–17).

Perhaps more importantly in this case, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court concluded that as to aliens who were admitted to the United States but subsequently ordered removed, "indefinite detention . . . would raise serious constitutional concerns," so the Supreme Court "construe[d] the statute [*i.e.*, 8 U.S.C. § 1231(a)(6)] to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Zadvydas,* 533 U.S. at 682. Le was originally admitted to the United States as a refugee, but he was subsequently ordered removed. In *Zadvydas*, the Supreme Court recognized a six-month presumptively constitutional period of detention. *Id.* at 701. The Supreme Court explained,

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. However, the Supreme Court cautioned that a standard that required an alien seeking release "to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable" would "demand[s] more than [the Court's] reading of the statute can bear." *Id.* at 702 (emphasis in the original).

Section 1231(b) identifies countries to which aliens may be removed. 8 U.S.C. § 1231(b). It is not clear from the record whether Le falls within § 1231(b)(1), which applies to "an alien who arrive[d] at the United States and with respect to whom proceedings under section 1229a of this

title were initiated at the time of such alien's arrival," or § 1231(b)(2), which applies to "[o]ther aliens." *See* 8 U.S.C. § 1231(b)(1), (b)(2). However, both § 1231(b)(1) and § 1231(b)(2) provide for removal to countries including the alien's country of citizenship or a third country willing to accept the alien. *See* 8 U.S.C. § 1231(b)(1)(C), (b)(2)(D)–(E).

### B. The Constitutionality of Le's Continued Detention

Le's only claim for habeas corpus relief in this action is that his "prolonged" detention without an individualized bond hearing violates the due process clause of the Fifth Amendment. Filing 1 at 2. The Court begins its analysis of this claim with a summary of the parties' arguments.

### 1. The Parties' Arguments

In his *pro se* Petition, Le argues that civil immigration detention is not punitive and must bear a reasonable relationship to its purpose. Filing 1 at 2. He contends that due process requires an individualized bond hearing once detention becomes "prolonged." Filing 1 at 2. He asserts that continued detention without such procedural protections is unlawful. Filing 1 at 2.

The Federal Respondent argues that Le's supervised release was revoked, that he was detained, that his travel documents are pending, and that his detention so far is presumptively valid under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Filing 4 at 1–2. The Federal Respondent argues that Le's removal is significantly likely to occur within the reasonably foreseeable future, so Le's Petition should be denied. Filing 4 at 2. More specifically, the Federal Respondent argues that Le's detention for what is now barely two months is within the *Zadvydas* presumption of validity and is justified until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. Filing 4 at 6. The Federal Respondent argues that Le's "nonspecific" claim and corresponding lack of evidence fails to carry his burden to show invalid detention. Filing 4 at 6. To the contrary, Federal Respondent argue, the evidence shows that removal in the reasonably foreseeable future is likely, as the legal path for Le's removal was

"paved" by the 2020 MOU between Vietnam and the United States, and the travel document request for Le was submitted to ICE headquarters on February 6, 2026. Filing 4 at 6–7. The Federal Respondent asserts that the record does not establish that there is no significant likelihood of removal in the reasonably foreseeable future. Filing 4 at 7.

In reply, Le's appointed counsel asserts that Le's detention period should be calculated based on the cumulative time detained and that the detention time does not restart each time he is re-detained. Filing 14 at 4–5. Le contends that the Federal Respondent fails to account for his total detention and provides no support for the view that the *Zadvydas* period should restart each time an alien enters ICE custody. Filing 14 at 4. Le clarifies that he is not arguing that any detention, or re-detention, beyond the 180-day period is *per se* a constitutional violation but that detention is only constitutional when there is a significant likelihood of removal in the reasonably foreseeable future, which is not so here. Filing 14 at 5. He argues that the MOU between Vietnam and the United States does not guarantee or even suggest that it is likely that he will be removed in the foreseeable future. Filing 14 at 7. Similarly, he argues that the Federal Respondent has failed to establish that travel documents will be approved in the foreseeable future. Filing 14 at 8–9. He suggests that the existence of the MOU for nearly six years without approval of his removal shows that his removal is no more foreseeable now than it was five years ago. Filing 14 at 9. He also argues that his detention is no longer justified. Filing 14 at 5–6. As such, he argues that his prolonged detention for a cumulative period of over 1,200 days violates the due process clause of the Fifth Amendment. Filing at 10.

### 2. The Court Rejects a Calculation Based on the "Cumulative" Period of Detention

The keystone of Le's argument that his detention is unconstitutional is his contention that what matters is the "cumulative" period of his detentions, including his detention more than two

decades ago after he was first ordered removed for engaging in criminal conduct and the two months of detention after his re-arrest. The Court finds this argument unpersuasive; indeed, it appears that not a single Circuit Court of Appeals has accepted it. As one district court has observed,

> This Court does not read *Zadvydas* to be a permanent "Get Out of Jail Free Card" that may be redeemed at any time just because an alien was detained too long in the past. The Court's focus is on *today* and whether Petitioner will likely be removed in the reasonably foreseeable future based on the facts available to the Court *today*.

*Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018) (emphasis in the original).

Although this Court would find it problematic if a petitioner were repeatedly arrested and released in an apparent effort to start a new six-month clock under *Zadvydas*, the Court finds no such circumstances in this case. Le also ignores numerous courts that have rejected a "cumulative" or "aggregate" calculation of the detention period for purposes of the *Zadvydas* limitation and instead conclude that the clock "restarts" when the alien is again detained. *See, e.g.*, *Sik Yue Lee v. Jeffrey Crawford*, No. 2:25CV535, 2026 WL 745263, at *3 (E.D. Va. Feb. 27, 2026), *report and recommendation adopted*, No. 2:25CV535, 2026 WL 738591 (E.D. Va. Mar. 16, 2026); *Flores-Reyes v. Assistant Field Off. Dir.*, 2026 WL 406708, at *2–3 (S.D. Fla. Feb. 13, 2026); *Nguyen v. Bondi*, No. CIV-25-01204-JD, 2025 WL 4114231, at *2 (W.D. Okla. Dec. 31, 2025); *Abedi v. Carter*, No. 25-3141-JWL, 2025 WL 3209009, at *1 (D. Kan. Oct. 6, 2025); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025); *Liu v. Carter,* No. 25-3036, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025). There are prudential reasons why the "cumulative" approach Le advocates cannot be accepted, including the executive branch's authority in admission and removal of aliens. *See, e.g.*, *Flores-Reyes*, 2026 WL 406708, at *2–3 (declining to aggregate multiple detentions "[g]iven the executive branch's immigration-related

13

expertise and statutory authority to effectuate removals"); *Barrios*, 2025 WL 2280485, at *8 ("[A]djudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals.").

The biggest problem with a "cumulative" or "aggregate" calculation of the constitutional detention period, however, is that it is unsupported by *Zadvydas* itself. In *Zadvydas*, the Supreme Court explained that the purpose of detention is to "assur[e] the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court was aware in *Zadvydas* of the possibility of supervised release after expiration of the initial 90-day period for removal. 533 U.S. at 683 (observing that "[a]fter entry of a final removal order and during the 90–day removal period . . ., aliens must be held in custody" and that "[s]ubsequently, as the post-removal-period statute provides, the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." (citing 8 U.S.C. §§ 1231(a)(2) and § 1231(a)(6)). Yet, the Supreme Court never expressly tied the beginning of the limitation period to the first period of detention without regard to periods of supervised release that might follow. Likewise, there is no language suggesting that the 6-month period would continue to run during any subsequent period of detention after supervised release but before ultimate removal. The bottom line in *Zadvydas* was that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," even if the alien is not required "to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." 533 U.S. at 701–02 (emphasis in the original). This language and the Supreme Court's awareness of the possibility of supervised release pending removal—which would necessarily require subsequent detention if circumstances changed to allow removal—convinces this Court that the constitutional concern expressed in *Zadvydas* arose from a period of continuous detention in excess of 6 months, not from

an aggregation of any prior period of constitutionally permissible detention with a subsequent period of detention when calculating the 6-month period.

Thus, the only period of detention that matters for purposes of applying the *Zadvydas* limitation is Le's current period of detention. That detention began in January 2026 and has run barely two months so far, which is well within the 6-month presumptive limitation on constitutional detention imposed in *Zadvydas*.

### 3. Le Has Not Met His Burden to Show that Removal Is Not Likely in the Reasonably Foreseeable Future

Notwithstanding that the Court concludes that Le's detention is still well within the *Zadvydas* limitation, the Court will in an abundance of caution consider whether Le has met his initial burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701 ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."); *see also Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024). ("So the question before us is whether Vasquez Castaneda has provided 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future' [and] "[i]f he has, then the burden shifts to the Government to rebut that showing. If he hasn't, then his claim fails and we proceed no further.").

Le has made no showing at all that there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future. Instead, he argues that the failure to remove him sooner after Vietnam and the United States entered into the MOU suggests that his removal pursuant to the MOU is not reasonably foreseeable. Filing 14 at 9. This argument is unavailing. *See Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *5 (D. Minn. Jan. 6, 2025) (stating, "Mr. Perez

15

has provided no evidence in the record other than the passage of time to demonstrate that he is not likely to be removed in the foreseeable future," so his claim was denied). In *Zadvydas*, the Supreme Court rejected the Ninth Circuit's conclusion in one of the cases below that the "absence" of an "extant or pending" repatriation agreement warranted release of the petitioner because the Ninth Circuit failed to give "due weight to the likelihood of successful future negotiations." 533 U.S. at 702. Although that statement was in the context of the test for the government to rebut the *Zadvydas* presumption of unconstitutional detention, it also signals that "the likelihood of successful future negotiations" cannot be ignored when considering whether an alien has met his or her initial burden. Here, there is evidence that there has been a similar change in circumstances making the likelihood that Vietnam will issue Le travel documents reasonably foreseeable. The Notice of Revocation of Release informed Le that his case was under review by Vietnam for issuance of a travel document. Filing 6 at 5 (¶ 23). Le has been compliant with requirements that he fill out forms necessary for repatriation. Filing 6 at 4 (¶ 25). A travel document request was submitted to ICE Headquarters on February 6, 2026. Filing 6 at 5 (¶ 25).

Furthermore, nothing in the record suggests "a calculated pattern of catch-and-release designed merely to reset the *Zadvydas* clock or evade judicial review," as to Le or as to any group of aliens. *Molina Villar*, 2026 WL 730327, at *3. To the contrary, the record shows that ICE did not even attempt to remove Le the moment Vietnam and the United States entered into the MOU, but only when, according to the Notice of Revocation of Release, Le's case was under review by Vietnam for issuance of a travel document. Filing 6 at 5 (¶ 23). Thus, contrary to Le's contention, the delay after the MOU was issued before an attempt to use it to remove Le suggests rather than undermines the likelihood of removal in the reasonably foreseeable future.

Thus, Le has not met his burden to show that there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future, so he is not entitled to habeas corpus relief at this time.

4. *The Federal Respondent Has Rebutted the* Zadvydas *Presumption of Unconstitutional Detention*

Assuming for the sake of argument that the 6-month presumptive limitation in *Zadvydas* had been exceeded and that Le had met his initial burden to show that there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future, the Court concludes that the Federal Respondent has met its burden to produce "evidence sufficient to rebut [Le's] showing. *Zadvydas*, 533 U.S. at 701.

As mentioned above, in *Zadvydas*, the Supreme Court rejected the Ninth Circuit's conclusion in one of the cases below that the "absence" of an "extant or pending" repatriation agreement warranted release of the petitioner because the Ninth Circuit failed to give "due weight to the likelihood of successful future negotiations." 533 U.S. at 702. Here, there is a MOU between Vietnam and the United States for repatriation of Vietnamese citizens such as Le. The Court also credits the Federal Respondent's evidence that according to the Notice of Revocation of Release, Le's case is under review by Vietnam for issuance of a travel document. Filing 6 at 5 (¶ 23). Likewise, the Court credits the Federal Respondent's statements that Le has been compliant with requirements that he fill out forms necessary for repatriation and that a travel document request was submitted to ICE Headquarters on February 6, 2026. Filing 6 at 5 (¶ 25). Thus, the Federal Respondent has rebutted any contention that the government is either unwilling or, due to seemingly insurmountable barriers, incapable of executing Le's removal. *See Deqa M. Y. v. Barr*, No. 20-CV-1091 (ECT/DTS), 2020 WL 4926618, at *2 (D. Minn. Aug. 21, 2020) ("[F]or there to be no significant likelihood of removal in the foreseeable future, there must be some indication

that the government is either unwilling or, due to seemingly insurmountable barriers, incapable executing an alien's removal." (quoting *Ahmed v. Brott*, No. 14-cv-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015)), *report and recommendation adopted*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015)).

For this further reason, Le is not entitled to habeas corpus relief.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Ninh Le's Petition for a Writ of Habeas Corpus, Filing 1, is denied in its entirety.

The Clerk of Court shall close the case.

Dated this 24th day of March, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

18